Dennis J. ROBERTS II, Attorney General,

v.

The NARRAGANSETT ELECTRIC
COMPANY.

No. 82–156–M.P.

Supreme Court of Rhode Island.

Jan. 11, 1984.

Dennis J. Roberts II, Atty. Gen., Carolyn Wexler, Sp. Asst. Atty. Gen., for plaintiff.

Thomas G. Robinson, Providence, Samuel Huntington, Westborough, Mass., for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on a statutory petition for certiorari filed by the Attorney General pursuant to G.L.1956 (1969 Reenactment) § 39–5–1, as amended, to review an order of the Public Utilities Commission (PUC) calculating refunds due from Narragansett Electric Company (Narragansett) to its customers, and entered on March 30, 1982.[1] We affirm the PUC's order. The facts as outlined in the report and order and supplemented by the parties are generally undisputed and may be stated as follows.

Narragansett is an affiliate of New England Power Service Company (NEPCO) and purchases all of its electricity wholesale from NEPCO at rates established by the Federal Energy Regulatory Commission (FERC). During the times relevant to this controversy, it was the practice of FERC to allow rates filed by NEPCO to go into effect after an initial suspension period with no full investigation and hearing thereon. The rates were made effective subject to a final determination by FERC. In the event that FERC finally determined that such rates were excessive, refunds were ordered to be made to the wholesale customers, together with interest.

The NEPCO rates for wholesale electricity sold during this period were denominated for FERC purposes as rates R–10, R–11, and R–12. Rate R–10 was effective from March 1, 1976, to January 21, 1977. Rate R–11 was effective from February 1, 1977, through May 31, 1978. Rate R–12 was effective from June 1, 1978, to June 30, 1979. Narragansett's experience with R–10 is illustrative of the problem it encountered in recovering the amount of its wholesale costs to NEPCO.

When R–10 was made effective, Narragansett filed with the PUC a notice of price

1. The pertinent section in effect at the time of this controversy was G.L.1956 (1969 Reenactment) § 39–5–1. Subsequent to the date of this controversy, the Legislature adopted the 1977 Reenactment of this volume of the General Laws. However, no change was made in this section.

adjustment pursuant to the Purchased Power Cost Adjustment (PPCA) provisions in its tariff. This filing was made on December 1, 1975 (before the effective date of R–10). However, the PUC determined that it had jurisdiction to make an independent determination of the reasonableness of R–10 rates and scheduled hearings in order to consider the issues relating to such rates. Thus, the PUC suspended the proposed modification in Narragansett's rate PPCA for a nine-month period, and ultimately on December 1, 1976, it authorized a modification in Narrangansett's PPCA less than that required to recover the cost of the rate charged by NEPCO under the R–10 rate as approved by FERC. This determination was found by this court to be a violation of the exclusive jurisdiction of the federal regulatory agency.[2] *Narragansett Electric Co. v. Burke,* 119 R.I. 559, 565, 381 A.2d 1358, 1361 (1977). Thereafter, the PUC authorized Narragansett to charge a rate that was prospectively equal to R–10, but retroactive relief was denied in accordance with our decision in *Narragansett Electric Co. v. Burke,* 119 R.I. at 568–71, 381 A.2d at 1363–64.

Consequently, Narragansett paid out during the R–10 rate period $8,788,159 but recovered from ratepayers during the same period only $1,000,152, due to the PUC's delay in implementing Narragansett's corresponding PPCA No. 5 rate. Subsequently, by order of the FERC, NEPCO refunded to Narragansett $4,253,012 in overcollections under the R–10 rate, plus interest. This amount did not reimburse Narragansett for its undercollection of $7,788,007 under PPCA No. 5 pursuant to the findings of the PUC.

Similarly, during the period when rate R–11 was effective, February 1, 1977, through May 31, 1978, Narragansett paid to NEPCO additional charges of $4,101,412. However, recovery under Narragansett's PPCA No. 5A rate amounted to only $773,919. Thus, there was an undercollection during this period of $3,327,493. The subsequent refund ordered by FERC from NEPCO to Narragansett was in the amount of $2,667,254. This was less than the underrecovery of $3,327,493 during the period when R–11 was in effect. Consequently, the PUC concluded that no refunds were due to Narragansett's ratepayers for the periods when rates R–10 and R–11 were in effect.

Rate R–12 was in effect from June 1, 1978, through June 30, 1979, and during this period Narragansett's cost of purchase of power from NEPCO increased by $3,444,202 while recovery under Narragansett's associated PPCA No. 6 rate amounted to $3,130,429. Ultimately, NEPCO was required to refund $2,408,555 to Narragansett. This sum was greater by $2,094,782 than Narragansett's undercollection of $313,773. Consequently after adjusting this refund for interest and taxes, the PUC determined that there was a refund obligation to retail customers of $2,607,103.[3]

The sole issue raised on appeal is the propriety of the decision of the PUC in interpreting paragraph 2 of the PPCA tariff in such a fashion that "the 'equitable adjustment' is the *net* 'applicable excess amount collected by the company from its customers' *during the wholesale rate period.*" (Emphasis in original.) The PUC went on to observe that "[o]nly this interpretation fairly and sensibly determines any amounts that Narragansett Electric in fact would overrecover and therefore should refund."

The applicable portion of the PPCA tariff governing refunds reads as follows:

"If the Company receives any refunds from New England Power Company rep-

2. At that time the governing federal agency was the Federal Power Commission. Its successor agency is the Federal Energy Regulatory Commission (FERC).

3. The PUC ruled that this refund would be used to offset the extraordinary costs incurred by Narragansett in restoring service after the ice storm of 1978. This offset provision in the order is not challenged by this petition. *See Narragansett Electric Co. v. Burke,* R.I., 415 A.2d 177 (1980).

resenting an amount collected in excess of the amount which would have been collected under the rates subsequently approved by the Federal Power Commission, the Company will make an equitable adjustment with its customers on those rates affected by the Company's Purchased Power Cost Adjustment. The amount of such adjustment by the Company shall not be greater than any applicable excess amount collected by the Company from its customers."

The Attorney General challenges the PUC interpretation and strongly asserts that refunds should be calculated without reference to the periods when Narragansett was unable to charge an amount equivalent to the rates placed in effect under FERC policy by NEPCO. He suggests that these underrecoveries should not be balanced against the amounts refunded and that these amounts should be irretrievably lost under the doctrine of "regulatory lag." He further suggests that balancing of underrecoveries against refunds constitutes retroactive ratemaking forbidden by this court as a general rule, *Bristol County Water Co. v. Harsch,* 120 R.I. 223, 231, 386 A.2d 1103, 1108 (1978); *Narragansett Electric Co. v. Burke,* 119 R.I. at 570, 381 A.2d at 1364, save for extraordinary circumstances such as those set forth in *Narragansett Electric Co. v. Burke,* R.I., 415 A.2d 177, 179–80 (1980). We reaffirm our principles in respect to retroactive ratemaking but do not believe that such a principle is involved in this case. The specter of retroactive ratemaking must not be viewed as a talismanic inhibition against the application of principles based upon equity and common sense.

In the case at bar the PUC was required to interpret an existing tariff provision. No new rates were requested or set by the PUC in this report and order. The only question presented was the proper manner of interpreting a provision of the tariff whose final sentence required that "[t]he amount of such adjustment by the Company shall not be greater than any applicable excess amount collected by the Company from its customers."

In determining this amount, as with any refund, the PUC must engage in a retrospective analysis in order to determine what, if any, excess amounts have been collected. A computation covering in each instance the entire time during which the pertinent FERC rate was in effect is eminently fair and reasonable. To impose a refund obligation upon Narragansett for the periods during which R–10 and R–11 were in force, in light of its underrecoveries from its ratepayers in amounts far exceeding the sums refunded, would border upon the unconscionable. The Attorney General's suggestion that this result might be achieved by considering only those months during which the revised PPCA rates were in effect is creative and, indeed, ingenious, but it cannot be termed equitable. We conclude that the interpretation of the PUC in calculating the amounts of the refunds due under each of these wholesale rates, R–10, R–11, and R–12, was correct and completely in accordance with the applicable tariff provisions. There was no element of ratemaking, retroactive or otherwise, involved in this report and order.[4]

For the reasons stated, the petition for certiorari is denied and dismissed. The writ heretofore issued is hereby quashed, and the record certified to this court is ordered returned to the Public Utilities Commission with our decision endorsed thereon.

---

4. It should be noted that no request was made by Narragansett, nor did the PUC purport in any way, to reimburse Narragansett for its underrecoveries above and beyond the amounts of the refunds (approximately $3,500,000 under R–10 and $660,000 under R–11).