**BLACKSTONE VALLEY
ELECTRIC COMPANY**

v.

**PUBLIC UTILITIES COMMISSION and its members, and Edward F. Burke in his capacity as Public Utilities Administrator.**

**No. 88–20–M.P.**

Supreme Court of Rhode Island.

June 27, 1988.

Peter J. McGinn and Peter V. Lacouture, Tillinghast, Collins & Graham, Providence, David Fazzone, Boston, Mass., for plaintiff.

James E. O'Neil, Atty. Gen., Sheldon Whitehouse, Asst. Atty. Gen., for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on statutory petitions for certiorari filed by Blackstone

Valley Electric Company (the company) and the Attorney General pursuant to G.L. 1956 (1984 Reenactment) § 39–5–1, to review an order of the Public Utilities Commission (PUC) calculating and placing restrictions upon refunds for cost of power received by the company from Montaup Electric Company (Montaup) for a period extending from 1981 through 1986. This refund represented excess amounts paid by the company to Montaup as found by retrospective rate adjustments made by the Federal Energy Regulatory Commission (FERC). We sustain the PUC order in part and modify it in part. The facts of the case insofar as pertinent to these petitions are as follows.

From November 5, 1981, through December 31, 1986, Montaup provided electric power to the company at interim rates allowed by FERC, subject to retrospective review and refund. The company, for a number of reasons, including failure of timely filing, was not permitted to recover the entire amount of interim charges made by Montaup from its customers. As a consequence, when the total refund amount of $4,789,441.04 was received from Montaup, the company proposed that it be allowed to refund over a period of time to its ratepayers the excess amounts paid by them over the period and retain for its own unrestricted use the sum of $1,866,340.37 together with interest on the ground that this sum had never been charged to the ratepayers and had been furnished by the company from its own funds.

To summarize the company's proposal, it requested permission to return a total of $1,829,911.97 to ratepayers by direct payment to past customers or credit to existing customers. In substance this request was granted. The company further requested that the remainder of the refund consisting of $1,866,340.37 principal received from Montaup together with $1,093,188.70 interest thereon be retained by the company for its own use since the principal amount of this refund had never been paid by the company's customers and had been paid to Montaup from the company's equity resources. The PUC recognized that the ratepayers were not entitled to this portion of the refund but required that the proceeds of this refund, together with interest thereon, be placed in an escrow account whose use would be limited to purposes approved by the PUC as a "source of funds designed to recompense [the company] for expenses associated with such initiatives as a load management and conservation program and/or membership to the Electric Power Research Institute."

The Attorney General argued before the PUC and to us that the entire amount of the refund should have been given to the ratepayers on the ground that any other disposition of these funds would constitute retroactive ratemaking in violation of principles enunciated in prior decisions of this court, *Bristol County Water Co. v. Harsch,* 120 R.I. 223, 231, 386 A.2d 1103, 1108 (1978); *Narragansett Electric Co. v. Burke,* 119 R.I. 559, 569–70, 381 A.2d 1358, 1363–64 (1977), save for extraordinary circumstances such as those encountered in *Narragansett Electric Co. v. Burke,* 415 A.2d 177, 179–80 (R.I. 1980).

We consider this argument to be untenable in light of our opinion in *Roberts v. Narragansett Electric Co.,* 470 A.2d 215 (R.I. 1984), in which we set forth clearly and unequivocally that disposition of a refund for charges made to a Rhode Island utility company by its wholesale power supplier did not constitute ratemaking, either retroactive or otherwise. We stated that "[t]he specter of retroactive ratemaking must not be viewed as a talismanic inhibition against the application of principles based upon equity and common sense." *Id.* at 217. We believe that the identical principles are applicable in the case at bar.

■ For reasons that are not entirely clear to us, the Attorney General argues that *Roberts* is distinguishable from the case at bar. He suggests as a critical distinction that the PUC decided in the utility's favor in *Roberts* but did not do so in the case at bar because the PUC had three times rejected the company's efforts to effect the retroactive recovery of its Purchased Power Cost Adjustment (PPCA) provision in its tariff. We are of the opin-

ion that this fact is not conclusive or even relevant to the disposition of the refund. Great deference is paid to decisions of the PUC in its ratemaking-regulatory capacity, *Narragansett Electric Co. v. Kennelly*, 88 R.I. 56, 85, 143 A.2d 709, 726 (1958), and we assume that principles of retroactive ratemaking deterred the PUC from rating adjustments that would have provided a retroactive recovery of the company's PPCA under-collections. Therefore, had FERC not required the instant refund, the company would never had recovered its under-collections. Said funds would probably have been lost to the company for all time.

 However, as we attempted to point out in *Roberts* and again reiterate, when a refund is made pursuant to a FERC determination, the company is entitled to retain that portion of the refund that represents sums which it paid from its own equity resources, together with interest thereon, and must refund to its customers the excess sums collected from them toward payment of its wholesale power supplier. Any other disposition would be unfair and inequitable. No doctrine of retroactive ratemaking or the administrative version of res judicata should or may inhibit this result. The commission emphasized in its report and order the absence of an " 'Equitable Adjustment' " clause in the most recent tariff filed by the company. We do not find this deletion to be either compelling or conclusive. We believe that all tariffs should be interpreted in accordance with equity and good conscience regardless of the specific language in which they may be couched.

 The PUC has recognized that the ratepayers are not entitled to the return of that portion of the refund to which they never contributed. However, the PUC has chosen to place restrictions upon that portion of the refund that it allowed to remain with the company. These restrictions cannot be allowed to stand. It is the function of the PUC to regulate a utility in order to determine that its rates are fair and reasonable. It is not the function of the PUC to manage the utility or to exercise the prerogatives of ownership. *New England Telephone and Telegraph Co. v. Public Utilities Commission*, 116 R.I. 356, 375, 358 A.2d 1, 13–14 (1976); *United Transit Co. v. Nunes*, 99 R.I. 501, 512–13, 209 A.2d 215, 222 (1965); *Narragansett Electric Co. v. Kennelly*, 88 R.I. at 86–87, 143 A.2d at 726. However benign and well-intentioned the creation of this escrow fund may have been, we believe that the company was entitled to the return of its portion of the refund together with interest thereon to be used without restriction for its general corporate purposes.

For the reasons stated, the company's petition for certiorari is granted. The PUC's report and order is sustained in part and quashed in part. The Attorney General's petition for certiorari is denied and dismissed.[1] The papers in the case may be remanded to the PUC with our decision endorsed thereon.

---

1. The company has argued in its brief that the Attorney General is not properly before this court because his cross-petition for certiorari was not filed within the period set forth in G.L. 1956 (1984 Reenactment) § 39–5–1. In view of our disposition of the petition, we have considered the Attorney General's arguments on their merits as though his petition had been timely filed. Our having done so does not indicate in any way that we may not require strict observance of time limitations in the future.