[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a final decision of the Public Utilities Commission Division of Public Utilities Carriers (hereinafter "PUC" or "Division"), denying Paul Desrosiers (hereinafter "Desrosiers") d/b/a "Big Daddy Taxi Service, Inc." the authority to operate a taxi service. The Appellant, Desrosiers, has filed this appeal seeking to overturn the PUC's final order issued on September 11, 2002. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
On June 4, 2002, Paul Desrosiers, d/b/a "Big Daddy Taxi Service, Inc." filed an application with the PUC seeking authority to operate one taxicab in Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport. On June 19, 2002, a Motion to Intervene was filed on behalf of Quality Taxi, Inc., which has operating rights in Lincoln. A duly noticed public hearing on Desrosiers' application was held on June 27, 2002.
As a preliminary matter, the Hearing Officer granted the Motion to Intervene on behalf of Quality Taxi, Inc. At the hearing, counsel for Quality Taxi, Inc. presented two additional Motions to Intervene Out of Time. The motions were filed on behalf of Corporate Transportation, which has operating rights in Providence, Cranston, Warwick, and T.F. Green Airport, and Airport Taxi, Inc., which has operating rights in Warwick, T.F. Green Airport, Providence, and Cranston. The Hearing Officer granted both Motions to Intervene Out of Time, over Applicant's objection, finding that the two late Intervenors had interests which might be directly affected and which were not adequately represented by existing parties.
At the hearing, Ms. Evelyn Gonzales, an officeholder of Evelyn's Taxi Inc., and Mr. Ozian Gomez, son of Ramona Gomez, an officeholder of Family Taxi, Inc., offered public comment in support of Mr. Desrosiers' application. Ms. Elaine Bedrossian, who had previously worked with the Applicant for twelve years, offered public comment in opposition to the granting of Mr. Desrosiers' application, claiming that when they had disagreements about the Providence Taxi Association, the Applicant harassed her and her husband In support of his application, the Applicant presented eleven witnesses who testified about their positive experiences with the Applicant as their taxi driver and the problems they have encountered with the various taxi companies in Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport. The hearing concluded on June 27, 2002.
On July 8, 2002, prior to the issuance of a written order, the Applicant filed a Motion to Reopen the Proceeding pursuant to Rule 29(a) of the Division's Rules of Practice and Procedure. The rule states, in pertinent part, that "any party to the proceedings may, for good cause shown, move to reopen the proceedings for the purpose of taking additional evidence . . . the motion . . . shall set forth clearly the facts claimed to constitute grounds requiring reopening of the proceedings, including material changes of fact or of law alleged to have occurred since the conclusion of the hearing. . . ."
In his Motion, the Applicant asserted two purposes for which he wanted to reopen the proceedings. First, the Applicant wanted to introduce evidence that one of the Intervenors, specifically Airport Taxi, uses the phrase "We Go Anywhere" in their telephone book advertising, without any complaints or action by the PUC.[1] The Applicant's second purpose for wanting to reopen the proceedings was that the Applicant wanted all mention of any alleged violation by him concerning an unofficial complaint to be stricken from the record.
On August 5, 2002, the Hearing Officer granted the Applicant's Motion to Reopen the Proceeding in part and denied it in part, stating that she did not believe the statement "We Go Anywhere" on the Applicant's business card violated any of the rules and regulations of the Division. On August 15, 2002, the Hearing Officer reopened the proceedings for the limited purpose of addressing the Applicant's concerns regarding the unofficial complaints mentioned on the record.
On September 11, 2002, the Division issued its decision denying Bid Daddy Taxi Service, Inc.'s application to operate one taxicab in Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport. The Hearing Officer concluded that while the Applicant satisfied the burden of proof associated with demonstrating that it is fit, willing, and able to operate as a taxicab company, the Applicant failed to establish that the proposed taxicab service is required by the present or future public convenience and necessity.
 Standard of Review
This Court is granted jurisdiction to review final orders of the PUC pursuant to § 42-35-15 of the Administrative Procedures Act. Specifically, this Court's scope of review of such decisions is governed by § 42-35-15(g), which provides:
 § 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency decision, the court must not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of the evidence.Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). A reviewing court will give great deference to an agency's final decision. Blackstone Valley Electric Co. v. PublicUtilities Commission, 543 A.2d 253 (R.I.), cert. denied,488 U.S. 995, 102 L.Ed.2d 587, 109 S.Ct. 561 (1980). Moreover, the court must affirm if there is substantial evidence in the record to support the decision and no other violation under § 42-35-15
is shown.
Conversely, if the agency's decision is clearly erroneous in view of the reliable, probative and substantial evidence contained in the whole record, the reviewing court may overturn it. Milardo v. Coastal Resources Management Council,434 A.2d 266, 270 (R.I. 1981). Only if the agency's factual conclusions are "completely bereft of competent evidentiary support in the record" will the court reverse. Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077, (R.I. 1988). If there is an interpretation or application of law at issue, however, the reviewing court is free to make its own determination. Carmodyv. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986); Turner v. Dept. of Employment Sec. B. of Rev.,479 A.2d 740, 742 (R.I. 1984). Thus, absent any judicial review of questions of law, the court's review is confined to the hearing record. § 42-35-15(f).
 The Agency's Decision
Pursuant to its powers enunciated in § 42-35-1(c), the PUC denied a license authorizing Applicant — Big Daddy Taxi Service, Inc. to operate a taxicab service in Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport. In its decision, the PUC found that although the Applicant could adequately perform the function proposed, the proposed service was not required by the public interest.
The PUC's final determination of an applicant's petition is governed by G.L. 1956 § 39-12-7. After reviewing the hearing officer's recommendatory order and findings of fact, the Division administrator "shall" approve the Order if two criteria have been met. The administrator must find that (1) ". . . that the applicant is fit, willing and able properly to perform the service proposed . . .", and (2) ". . . that the proposed service . . . is or will be required by the present or future public convenience and necessity . . ." Id. Thus, the administrator must be satisfied that the applicant has put forth sufficient evidence to meet the foregoing test.
The PUC determined that it had sufficient evidence before it upon which it could predicate the Applicant's fitness to operate a taxi service in the areas of Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport. The Division found that the Applicant met the requirements of fitness as prescribed by § 39-12-7, and after reviewing the record, this Court agrees. The Hearing Officer heard testimony from eleven witnesses who complemented the taxi service they received from Desrosiers and collectively described his service as "exceptional."[2] Many of these witnesses were steady customers of the Applicant's for periods ranging from three months to approximately nine years and had numerous opportunities to evaluate his performance. Furthermore, the Intervenors presented no witnesses to refute the Applicant's fitness to operate a taxi service.
With respect to the public necessity element set forth in §39-12-7, the PUC determined that the Applicant did not establish that his proposed taxi service was required by the present or future public convenience and necessity. The Appellant contends that the evidence in the record indicates that the proposed taxi service is required by public convenience and necessity. He asserts that the testimony of several witnesses confirmed that many cab companies in Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport are repeatedly late or never show up, refuse to do short runs,[3] do not accept credit cards as a form of payment, and are frequently discourteous. Furthermore, the Appellant points out that the Intervenors failed to produce any witnesses to challenge the Applicant's assertion that his proposed taxi service is necessitated by the public interest, or to establish that the public interest is sufficiently served by existing cab companies in those areas.
The PUC found that the Applicant failed to present any evidence to show that the public convenience and necessity warranted granting his application for the requested service territories. The PUC cites Murray v. LaTuippe's Service Station, Inc.,
wherein the court found that the Division "must have before it evidence that there is a public need for the proposed additional service." See Appellee's Brief at 3, citing Murray v.LaTuippe's Service Station, Inc., 277 A.2d 301 (R.I. 1975). InMurray, however, the Court reversed the PUC's grant of a certificate of public convenience and necessity authorizing a father and son service station to act as a towing service because "there [was] a complete lack of any competent evidence that the towing services being afforded by the certified carriers to the Tiverton area [were] inadequate to meet the public's demand" Thus, the applicants in Murray bear little resemblance to Mr. Desrosiers, who presented eleven witnesses to testify about the need for his type of taxi service within the areas he seeks to operate.
Furthermore, the PUC cites Yellow Cab Co. v. Freeman, for the proposition that a finding of public convenience and necessity is contingent upon an applicant showing that "service is not being provided to patrons who wish to be transported to" a certain territory. See Appellee's Brief at 3, citing Yellow Cab Co. v.Freeman, 282 A.2d 595 (R.I. 1971). In Yellow Cab Co., however, the Court determined that the applicant had made a showing of public convenience and necessity when he presented testimony indicating that patrons who wanted to be transported to certain sections of Providence were not being provided taxi service.
While cognizant of the fact that "public convenience and necessity" is a vague expression lacking any "well defined and precise meaning," in passing upon "public convenience and necessity," the PUC is bound by certain considerations. Abbot v.Public Utilities Commission, 136 A. 490 (R.I. 1927). Though afforded wide discretion in reaching a decision, as required under the arbitrary and capricious standard, the administrator's decision must be "rational" and "reasonable with no abuse of discretion." Gonclaves v. NMU Pension Trust, 818 A.2d 678, 682-83 (R.I. 2003). The Rhode Island Supreme Court has declared that "[a]dministrative fiat and surmise cannot alone sustain an agency's factual findings." State of Rhode Island, Office of theSecretary of State v. Rhode Island State Labor Relations Board etal., 694 A.2d 24, 28 (R.I. 1997). This Court is further guided by the principle that "the agency's findings and conclusions must be linked to the action it takes through a chain of reasoning. Whether an agency acts through rulemaking or through adjudication, the agency must state its reasons in support of its actions, and those reasons are subject to judicial review through application of the arbitrary and capricious test." Richard J. Pierce, Jr. Sidney A. Shapiro Paul R. Verkuil, Administrative Law and Procedure § 7.5 (3d ed. 1999).
The PUC found that the communities of Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport are adequately served by the present number of taxi companies operating in those areas. In particular, PUC notes that the Applicant has failed to show that existing taxicab service in the relevant geographical territory is inadequate. Additionally, PUC asserts that the witnesses' complaints about other cab companies in those areas during their testimony were either found to be incredible or that their complaints such as repeated tardiness and a refusal to do short trips failed to rise to the level that the Division has historically found warrants a finding of public convenience and necessity. The PUC makes these arguments without citing any previous decisions or any other historical data.[4]
Desrosiers, however, proffered testimony at the hearing that showed the present number of taxi companies servicing those areas is not sufficient to serve the public need. A number of witnesses testified on behalf of Desrosiers. One witness, Mr. Carter, who works in Providence, specifically stated that when he calls the cab companies, they are always late and being on time is critical where he works. (Tr. at 33). Another witness, Ms. Stroup, a resident of Providence, cited one instance when she called a cab company, they told her she would have to wait an hour and then they never showed up. (Tr. at 38). Ms. Stroup further stated that she believes there is a need for the Applicant's taxicab company in the cities of Providence and Lincoln because many of the cab companies don't want to provide service for short trips. (Tr. at 39). Another Providence resident, Mr. Corbail testified that there is a need for "good, honest service" that does not show up an hour late. (Tr. at 45, 47). Ms. Vieira, also a resident of Providence, testified that the cab companies are opposed to doing short trips and that on occasion they don't show up after they tell her a taxi has been dispatched. (Tr. at 62). Mr. Tolbert, a resident of North Providence, who regularly travels to Providence, Cranston, Johnston, and Lincoln by taxi, testified that there is a need for the Applicant's type of taxi service in each of those cities. (Tr. at 70). Ms. Drewior, a resident of Providence who regularly visits Cranston to see family, testified that there is a need for the Applicant's type of taxicab business in the cities of Providence and Cranston. (Tr. at 72). She also testified on redirect that she has had negative experiences with other cab companies in those areas, including failure to show up and extreme rudeness. (Tr. at 74). Ms. Young, a resident of North Providence with five children, explained that she has had problems with taking taxis because many of the cab companies refuse to take all her children in the cab and they are rude. (Tr. at 76-77). Mr. Waters, a resident of North Providence, who has lived in various areas in the City of Providence, testified that he has had bad experiences with taxicabs in the area including failure to show up at the designated place and tardiness. (Tr. at 85). Ms. Stukey, a resident of Providence, whose primary mode of transportation is taxicab, testified that other taxicabs always come late even when she reserves the cab in advance. (Tr. at 89-90). Ms. McLaren, who works and lives in Providence, testified that when she took another cab the driver overcharged her for a short trip. (Tr. at 94). Mr. Connelly, a resident of Providence, testified that he has had several bad experiences with other taxicab companies including their not showing up or coming up to 45 minutes late. (Tr. at 97). He also stated that with other taxicab companies it is more difficult to get a cab for the short rides as compared with long rides. (Tr. at 99).
In addition to the eleven witnesses testifying on his behalf, the Applicant himself testified about his own personal encounters with taxicab companies in the areas he seeks to operate, and the problems he has incurred in receiving timely service. (Tr. at 115). Moreover, he stated that many times when he calls the taxicab companies in those areas for taxi service, they inform him that there are no taxis available. (Tr. at 116). The Applicant also testified that many of the taxicab companies in the areas he seeks to operate do not accept credit cards as a form of payment, a service which he plans to provide in his proposed taxi service. Mr. Desrosiers testified that based on his own knowledge there are only nine taxicab companies in Providence which accept credit cards and for many of these companies the process of paying by credit card does not utilize current technology resulting in delays for the passenger. (Tr. at 105-06). The Applicant further testified that he knows of only nine taxicab companies in Cranston with credit card capabilities and that he does not know of any companies in Lincoln, North Providence, or Johnston that currently accept credit cards. (Tr. at 107, 108, 114-16). Mr. Desrosiers expressed the view that making such method of payment easily available and utilizing currently technology is convenient for those, such as airport clientele, who wish to take taxicabs.
It is clear from the Division's Report and Order and from the transcript of the hearing on this matter that there was substantial evidence in the record demonstrating that the proposed taxi service is or will be required by the present or future public interest. The Appellant presented eleven witnesses who testified about their dissatisfaction with the present cab companies and the problems they encounter including lateness, failure to show up at all, rudeness and an unwillingness to do short trips, difficulties they have not encountered with Mr. Desrosiers. The Intervenors provided no evidence to refute the statements made by the Applicant's witnesses, to establish that the present number of taxi companies sufficiently accommodate the public interest, or to rebut the claims of deficient, non-existent, rude, and inconvenient service.
The Division concluded that the Applicant did not demonstrate a need for his taxi service without providing the chain of reasoning for its conclusion. Regarding the Applicant's failure to show public convenience and necessity, the Decision simply states that "the witnesses did not indicate that taxi service in Providence, Cranston, North Providence, Johnston, Lincoln and T.F. Green Airport was inadequate, nor did the Applicant introduce other persuasive evidence to meet this burden." Decision and Order at 11-12. The Court is confounded by this conclusion since the record is replete with evidence to the contrary. Additionally, Mr. Desrosiers' testimony demonstrated that he is committed to providing an efficient credit card payment system, a service that is extremely beneficial to the public, particularly T.F. Green Airport passengers. The evidence of record demonstrates that the Applicants's proposed taxicab service is convenient and necessary to the geographical areas in which he seeks to operate. The testimony of record indicates that the public is best served by the addition of Applicant's taxi service that caters to its passengers and provides a higher degree of courteous, reliable, and necessary service.
 Conclusion
A careful, complete, and impartial review of the record, pursuant to G.L. § 42-35-15(g) leads this Court to the inescapable conclusion that the PUC's order denying the Plaintiff's application for a license to operate one taxi in Providence, Cranston, North Providence, Johnston, Lincoln, and T.F. Green Airport is arbitrary, capricious, and clearly erroneous in view of the reliable, probative, and substantial evidence in the record. Accordingly, the September 11, 2002 decision of the Public Utilities Commission, is reversed and this Court orders that Applicant's certificate to operate Big Daddy Taxi Service, Inc. be issued within 30 days of the entry of an order in this case.
[1] Interestingly, during the hearing, the attorney for this intervenor asserted that this phrase, as used in the Applicant's business card, was a violation of PUC regulations.
[2] Desrosiers had been employed as a driver for taxicab companies for fifteen years prior to his application to operate his own company.
[3] A "short run" was generally described as a fare of four dollars or less.
[4] In fact, Applicant offered specific cases heard by the PUC that, if portrayed accurately, substantiate instances where the PUC has granted taxicab licenses based upon significantly less persuasive evidence than the evidence presented here.