[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The matter before the Court is another chapter of the ongoing saga of the State of Rhode Island's decision to merge the two departments responsible for safety, security, and transportation in the judicial system — the Marshals and the Sheriffs — into one division. The individual appointed to lead this new division, Executive High Sheriff James P. DeCastro ("DeCastro"), was terminated approximately seventeen months after his appointment. DeCastro sought a hearing before the Personnel Appeal Board sitting as the Unclassified Appeal Board ("Board") challenging the determination that there was just cause for his discharge. In a one hundred and twenty-five page decision, the Board determined that the "state ha[d] not met its burden of providing substantial evidence of just cause." In these consolidated cases, the State of Rhode Island ("State") seeks reversal of the Board's decision and reinstatement of DeCastro's termination and DeCastro urges this Court to affirm the Board's decision. Jurisdiction is pursuant to G.L. 1956 §42-35-15.
 FACTS AND TRAVEL
On July 1, 2001, the General Assembly amended G.L. 1956 § 42-29-1. The amended legislation transferred the power to appoint sheriffs from the Governor to the Director of the Department of Administration ("DOA"). As a result of the amended legislation, the position of Executive High Sheriff was created by the General Assembly. Pursuant to authority under § 42-29-1, on November 26, 2001, then Director of DOA, Robert L. Carl, Jr. ("Carl"), appointed DeCastro as Executive High Sheriff. Prior to his appointment as Executive High Sheriff, DeCastro served as Bristol County Sheriff, appointed by then Governor Sundlun to complete the prematurely vacated term of Anthony Mederos ("Mederos"), whose term expired on June 1, 2001.
DeCastro served in the position of Executive High Sheriff until December 20, 2002 when he received a letter from Carl advising him that he was suspended with pay due to "general lack of administrative ability in a law enforcement/public safety operation." The letter also informed DeCastro of pending disciplinary action.
Subsequent to DeCastro's suspension, and prior to any decision being made regarding discipline, Governor Carcieri appointed Robert J. Higgins ("Higgins") to replace Carl as Director of the DOA. A pre-disciplinary hearing, lasting several days, was held on February 4 and 25, March 4 and 20, and April 7, 8, and 18 of 2003 before the Administrator of Adjudication, Sandra Murphy Crowe ("Crowe"). The hearings were conducted in the presence of DeCastro and his counsel. During the hearings, DeCastro was allowed to present evidence, exhibits and witnesses in his defense.
On April 21, 2003, Crowe issued a written recommendation to Higgins that DeCastro be terminated from his position as Executive High Sheriff after finding there was just cause to support termination. Relying on Crowe's recommendation and the hearing record, Higgins, in his capacity as the Director of DOA and as DeCastro's appointing authority, terminated DeCastro for cause from his position as Executive High Sheriff. By letter dated April 23, 2003, DeCastro was notified of his termination from his position effective April 24, 2003.
On May 9, 2003, DeCastro appealed Higgin's decision to the Unclassified Appeal Board, which was established pursuant to Executive Order No. 89-25. That Order provides that "there is hereby created and established the Unclassified Appeal Board for the purpose of hearing appeals by any person in the unclassified state service appointed for a fixed term who has been discharged by any appointing authority." The Executive Order also provides that the members of the Unclassified Appeal Board shall be the members of the Personnel Appeal Board. The Executive Order gives the Unclassified Appeals Board certain powers and states that:
 "After conclusion of the hearing the unclassified appeal board shall render a decision which may confirm the dismissal, demote the appellant, or otherwise modify the personnel action, or may reinstate the aggrieved person, and the board may order payment of part or all of the salary to the aggrieved person for the period of time he or she was dismissed. The decision of the board shall be final and binding upon all parties concerned, and upon a finding in favor of the aggrieved person, he or she shall be forthwith returned to his or her office or position without loss of compensation, seniority or other benefits he or she may have enjoyed, or under such terms as the appeal board shall determine." The Executive Order also incorporates "all rules, regulations, statutes, and procedures applicable to the Personnel Appeal Board which do not conflict with [the] order."
On July 8, 2003, the Unclassified Appeal Board commenced a hearing on DeCastro's appeal. A second hearing was held approximately two months after the first hearing on August 21, 2003. The State submitted the transcript of the hearing before Crowe, several exhibits, Crowe's written recommendation and Higgins' April 23, 2003 termination letter to DeCastro as evidence. DeCastro presented the Board with a decision from a Department of Labor and Training ("DLT") Referee, which was adopted by the Board of Review, granting DeCastro unemployment benefits. During the hearing, DeCastro did not present witnesses or personally testify before the Board. At the conclusion of the hearing before the Board on August 21, 2003, the State and DeCastro were ordered to provide written briefs to the Board. Both parties complied.
On April 13, 2004, before the Board rendered its decision, DeCastro filed a Motion for Reinstatement in Superior Court. On April 23, 2004, this Court declined to act on said motion after receiving an assurance from the Board's attorney that a decision would be issued within 30 days. The Board issued its decision, In Re: James P. DeCastro, on May 17, 2004. In its lengthy decision, the Board determined that the "State ha[d] not met its burden of producing substantial evidence of just cause" to terminate DeCastro. Finding that DeCastro was "in over his head" as Executive High Sheriff, the Board demoted DeCastro to "his former position as Bristol County Sheriff, effective, April 24, 2003. . . ." In an effort to clarify DeCastro's demotion to his former statutorily defined position as Sheriff of Bristol County, the State filed a Motion to Clarify the Board's Decision, to which DeCastro filed a response on June 14, 2004.
On June 15, 2004, the State filed an administrative appeal of the Board's decision pursuant to § 42-35-15. Subsequent to that filing, the Board issued a decision on the State's Motion to Clarify. The Board maintained that it did not terminate DeCastro from his position as Executive High Sheriff, and that DeCastro was to serve as Sheriff of Bristol County for the remainder of his fixed term as Executive High Sheriff.
The State submitted to this Court a Motion to Stay the Board's decision. On August 10, 2004, this Court granted the State's Motion to Stay concluding: 1) the state has a reasonable likelihood of success on the merits; 2) substantial and irreparable harm to the State exists in not granting the Stay; 3) DeCastro will be minimally harmed by the granting of a Stay and will only be impacted economically; and 4) it is in the best interest of the public to grant a Stay pending a decision on the merits.
 STANDARD OF REVIEW
This Court is granted jurisdiction to review final orders of the Personnel Appeal Board pursuant to § 42-35-15 of the Administrative Procedures Act. Specifically, this Court's scope of review is governed by § 42-35-15(g), which provides:
 "(g) The court shall not substitute its judgments for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic.] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
A reviewing court will give great deference to an agency's final decision. Blackstone Valley Electric Co. v. Public Utilities Commission,543 A.2d 253 (R.I. 1988). The Court's review is limited to a determination of whether substantial evidence existed to support the Board's decision. Newport Shipyard v. R.I. Comm'n for Human Rights,484 A.2d 893 (R.I. 1984). "Substantial evidence" has been defined by the court to mean that which "a reasonable mind might accept to support a conclusion." Id. at 897 (quoting Caswell v. George Sherman Sand GravelCo., 424 A.2d 646, 647 (R.I. 1981)). The Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Res.Mgmt. Council, 434 A.2d 266, 272 (R.I. 1971). However, questions of law determined by the administrative agency are not binding upon us and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record. Carmody v. Rhode Island Conflict ofInterest Commission, 509 A.2d 453, 458 (R.I. 1986).
 AUTHORITY OF THE BOARD
The State argues that the Board exceeded its authority by demoting DeCastro to a position that, pursuant to § 42-29-1(a), has a statutorily fixed term and may only be appointed by the Director of DOA, with the Governor's consent. It is the State's position that taking an individual appointed to one position with a statutorily fixed term and placing that individual into another position with a statutorily fixed term is a constructive appointment. Accordingly, the State maintains that the Board's decision infringes upon the statutory rights of the Director of DOA and the Executive Branch, and should therefore be reversed.
Conversely, both DeCastro and the Board contend that the Board has the authority to demote DeCastro to the position of Bristol County Sheriff pursuant to Executive Order No. 89-25. Respondents assert that the Executive Order bestows the Board with the power to demote an individual who has been discharged to an appointed position with a statutorily fixed term, if the Board finds that demotion is the appropriate remedy.
In making a determination as to whether the Board exceeded its power in demoting DeCastro to Bristol County Sheriff, this Court first looks to §42-29-1 — the statute which governs the power to appoint sheriffs. That statute provides as follows:
 "The director of the department of administration shall also appoint with the consent of the governor an executive high sheriff to a ten (10) year term to assist the administrator. The director of the department of administration shall also appoint to each of the counties with the consent of the governor the sheriffs and the chief deputy sheriffs to ten (10) year terms."
"It is well established that `when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" In reAdvisory Opinion to the Governor, 856 A.2d 320, 330 (R.I. 2004) (citingPezzuco Construction, Inc. v. Melrose Associates, L.P., 764 A.2d 174, 178
(R.I. 2001)) (quoting State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998)). Based on the clear and unambiguous language of § 42-29-1, this Court finds that the power to appoint sheriffs is within the sole authority of the Director of DOA, with the Governor's consent. In the instant case, when the Board demoted DeCastro from Executive High Sheriff to the position of Bristol County Sheriff, it also appointed DeCastro to a position that only the Director of DOA has the statutory power to appoint. DeCastro interprets the Board's decision as placing him in the position of Bristol County Sheriff for the remainder of his fixed term appointment as Executive High Sheriff, asserting that separation from one's position does not include separation from one's fixed term. However, DeCastro's argument ignores the fact that the remainder of his term as Executive High Sheriff is now being served by his successor, Sheriff Garry Dias. It is clear to this Court that under § 42-29-1, and the rule of construction set forth in Andersen v. Sundlun, 625 A.2d 213
(R.I. 1993), the Board does not have the authority to transfer, divide, share, or create a second 10-year term. In Andersen, the Court stated:
 "When the duration of a term of an office and the time of its commencement or termination is fixed by statute or constitution, a person elected or appointed to fill a vacancy in such office holds it for the unexpired portion of the term and until the qualification of a successor. We find that rule to be a reasonable one and we adopt it in this case." Id. at 215.
The Andersen Court went on to note that "[o]nly the Legislature by amending § 42-29-1 could change that term." Id. at 216. In the instant case, the Board is attempting to create a second 10-year term for the position of Executive High Sheriff to be served by DeCastro as Bristol County Sheriff — a change which only the Legislature has the power to make by amending § 42-92-1.
Moreover, this Court finds Respondents' reliance on DeCecco v. State ofRhode Island, 593 A.2d 1342 (R.I. 1991), unpersuasive. In DeCecco, our Supreme Court addressed the validity of Executive Order No. 89-25 in the face of a constitutional challenge. Finding that the Governor's issuance of the Executive Order did not infringe upon the Legislature, the Court declared:
 "It is our belief that the Legislature cannot have bestowed upon the Governor the power to remove without also giving him the ability to wield that power. Executive Order No. 89-25 appears to be the Governor's attempt to comport with due-process requirements in the exercise of that power."
The Supreme Court's decision clearly indicates that Executive Order No. 89-25 is valid in that it wields the power of the appointing authority by placing a check on the appointing authority's dismissal power. However, there is nothing in the Court's opinion which suggests that under Executive Order No. 89-25 the Appeal Board can assume its own executive powers.
Furthermore, the Board's argument that appointment to a lower sheriff position is the only feasible and logical demotion for a sheriff and, therefore, DeCastro's demotion to Bristol High Sheriff is necessarily proper under the Executive Order is unavailing. The Board's interpretation of Executive Order No. 89-25 asks this Court to find that the Board's power to demote includes the power to appoint positions — a right which by statute is within the exclusive appointment power of the Director of DOA. While it cannot be disputed that Executive Order No. 89-25 lists demotion as a remedy within the Board's power, it is clear to this Court that this power must be applied reasonably, within the context of the case at issue. Thus, if demoting an individual will necessarily conflict with the power of the Executive Branch, than it is not a feasible remedy for the Appeal Board. Accordingly, this Court finds that the Board exceeded its authority by appointing DeCastro to a position with a statutorily defined term requiring an exercise of the appointment power of the Executive Branch.
 SUBSTANTIAL EVIDENCE
The State further argues that the Board's decision is clearly erroneous in view of the substantial evidence on the record and is not supported by the Board's findings. The State contends that the Board contradicted itself when it concluded that DeCastro "was in over his head" and "unable to effectively lead the Sheriff's Division," and then went on to determine that just cause did not exist for DeCastro's termination.
Alternatively, the Board maintains that there is no contradiction in the Board's finding that DeCastro was "in over his head" as Executive High Sheriff and that the appropriate remedy was not termination, but demotion to Bristol County Sheriff. Although the Board concedes that it found some of the allegations against DeCastro to be supported by credible evidence, the Board argues that these deficiencies were not significant enough to justify DeCastro's termination.
After a review of the testimony, the Board concurred with the hearing officer and the Director on a number of factors upon which the State based its decision to terminate DeCastro. The Board found that after DeCastro was appointed, he failed to move his headquarters from Bristol to Providence until he was directly ordered to do so ten months later, despite many requests by his superiors that he make this move earlier. The Board found that DeCastro failed to maintain a proper chain of command within the agency and to successfully coordinate the duties of the marshals and sheriffs pursuant to the requirements of the statute. The Board found that DeCastro failed to immediately account for and protect weapons issued by the State of Rhode Island to sheriffs under his command. The Board found that DeCastro failed to maintain the appropriate mission and inform his subordinates of their duties and responsibilities under the law. The Board found that DeCastro failed to respond to emergencies where his presence as Executive High Sheriff was required. The Board found that DeCastro created a canine unit and patrol unit within the department, against orders, when staffing was critical in other areas. The Board also rejected some of the allegations made against DeCastro. The Board found that DeCastro did not fail to discipline and/or terminate employees when problems ensued. The Board found that DeCastro did not fail to coordinate the efforts of outlying courthouses. Finally, the Board found that DeCastro's absence from the court in Providence did not jeopardize the public's safety.
In light of the record testimony and the Board's own findings, this Court concludes that the substantial evidence in the record does not support the Board's decision that just cause did not exist to terminate DeCastro. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229,59 S. Ct. 206, 83 L. Ed. 126 (1938). Here, there is very little on the record to support the Board's ultimate conclusion that the State did not have just cause to terminate DeCastro, and absolutely no evidence that DeCastro could adequately handle the responsibilities of Executive High Sheriff. During oral arguments, Counsel for the Board suggested that just cause for termination only exists where an employee has been involved in criminal activity or gross misconduct, such as drug use, sexual relations on the job, felony theft, direct disobedience, and falsification of time cards. However, an examination of Rhode Island case law indicates that a state employee's conduct need not rise to the level of overt criminal activity, where there is an ongoing pattern of conduct adverse to the employer's directions and objectives.
In Rhode Island Laborers' District Council v. State, 592 A.2d 144
(R.I. 1991), the chief judge discharged the supervising deputy clerk for: 1) "granting employee vacation time while aware that the chief judge denied the same days"; 2) failing to maintain a log book"; 3) "taking unauthorized family sick leave"; 4) "failing to attend a meeting that the chief judge had specifically ordered him to attend." Although the arbitrator found these allegations to be true, the arbitrator concluded that discharge was not warranted and modified the employee's penalty to a six month suspension. On appeal, the Superior Court vacated the arbitrator's award and our Supreme Court affirmed. The Supreme Court declared:
 "It should be noted that the chief judge has been given by statute the power and duty to supervise the operations of the District Court. He has also been given the power to appoint a deputy clerk for each division to serve at his pleasure. There is no question that the collective-bargaining agreement limits the power of the chief judge to discharge at pleasure. It requires that such a discharge be imposed only for just cause. However, there are limits to the extent that a statutory power and responsibility may be bargained away in a labor contract." Id. at 146 (citations omitted).
The Court went on to make the following observation:
 "It is difficult to conceive the quantum of authority that would be retained by the chief judge if he were forced to reinstate a supervisory employee who had disobeyed him on at least four occasions, and on one of those occasions with no really articulable excuse or justification." Id.
In the present case, many of the Board's own findings reveal a glaring inability on the part of DeCastro to perform the necessary functions of an Executive High Sheriff. Moreover, several of the Board's findings evince a clear reluctance on the part of DeCastro to follow the directions of his superiors and take active measures to improve his ability to perform the job of Executive High Sheriff. DeCastro's unwillingness to move his office to Providence from Bristol, his failure to establish a chain of command and to efficiently coordinate the duties of those under his supervision, and his inability to set and articulate the mission of his department are examples of DeCastro's failure to adapt and perform in his new position as Executive High Sheriff.
In finding that just cause did not exist to terminate DeCastro, the Board reconciled DeCastro's inability to perform as Executive High Sheriff with the fact that DeCastro performed well as Bristol County Sheriff. However, this Court finds that DeCastro's ability to perform as Bristol County Sheriff does not mitigate DeCastro's poor performance as Executive High Sheriff. In accepting the position of Executive High Sheriff, DeCastro knowingly took on many more responsibilities than were expected of him in his previous position as Bristol County Sheriff.[1]
Based on the evidence in the record, this Court concludes that DeCastro was incapable of handling these additional responsibilities and did not take significant measures to improve the situation or adopt the suggestions of his superiors. Consequently, this Court finds that the Board's decision that no just cause existed to terminate DeCastro was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.
 ARBITRARY AND CAPRICIOUS
Finally, the State argues that the Board's decision to demote DeCastro to the position of Bristol County Sheriff after finding that he was in over his head as Executive High Sheriff is arbitrary and capricious and an abuse of the Board's discretion. At the pre-termination hearing, evidence of a settlement discussion between Carl and DeCastro was received by the hearing officer. The transcript of that testimony, subsequently considered by the Appeal Board, indicates that Carl urged DeCastro to step down to the position of Bristol County Sheriff when DeCastro was in the position of Executive High Sheriff. It is the State's position that the Board, in reaching its decision, erroneously considered Carl's offer to DeCastro that he accept his old position as Bristol County Sheriff when he could not handle the position of Executive High Sheriff.
In response, the Board argues that it was the State that submitted the entire transcript of the pre-termination hearing, including the evidence of Carl's offer to DeCastro, for the Board's review and, therefore. the State has waived any objection to the Board's consideration of this evidence. The Board maintains that its decision to demote DeCastro to the position of Bristol County Sheriff was not arbitrary or capricious in light of the evidence on the record demonstrating that DeCastro was qualified for said position.
This Court finds the Board's attempt to implement a settlement offer made to DeCastro by the former administration to be arbitrary and capricious and an abuse of the Board's discretion. The settlement offer to DeCastro to return to his previous position as Bristol County Sheriff at a salary of $68,000 per year was made by Carl when he was the Director of DOA and, therefore, had the power pursuant to § 42-29-1 to appoint sheriffs. Carl has since been replaced by Higgins as Director of DOA and no longer possesses appointment power. Moreover, Carl's offer to DeCastro ended after DeCastro refused to accept the position of Bristol County Sheriff. It is obvious to this Court that it was not the Board's place to assume the executive power which was needed to make that offer.
Furthermore, this Court finds that the arbitrary and capricious nature of the Board's decision undermines the public interest. Rather than confine themselves to DeCastro's ability to perform the full complement of duties as Executive High Sheriff, the Board created a completely different analysis by considering whether the evidence in the record established his inability to perform in his former position as Bristol County Sheriff. "[E]ven though an agency decision may have been supported by substantial evidence, where other evidence in the record detracts from that relied upon by the agency [the court] may properly find that the agency rule was arbitrary and capricious." American Tunaboat Ass'n v.Baldridge, 738 F.2d 1013, 1016 (9th Cir. 1984). In the instant case, there is little question that the thrust of the Board's lengthy analysis of the evidence was misdirected. The Board's preoccupation with the belief — once a state executive, always a state executive — notwithstanding the inability to adequately perform all duties and responsibilities of the position is evident. This is not a case requiring the application of "progressive discipline." The Board's employment protection mentality has no place in the determination of whether just cause existed to terminate the highest ranking sheriff — the leader of a department of two hundred individuals entrusted with essential duties and responsibilities relating to the safety, security and orderly functioning of the court system.
This Court is a proponent of the view that agencies and courts should work together to protect the integrity of the administrative process in furtherance of the public good. The District of Columbia Circuit has eloquently stated:
 "The process thus combines judicial supervision with a salutary principle of judicial restraint, an awareness that agencies and courts together constitute a "partnership" in furtherance of the public interest, and are "collaborative instrumentalities of justice." The court is in a real sense part of the total administrative process, and not a hostile stranger to the office of first instance. This collaborative spirit does not undercut, it rather underlines the court's rigorous insistence on a need for conjunction of articulated standards and reflective findings, in furtherance of evenhanded application of law, rather than impermissible whim, improper influence, or misplaced zeal." Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851-52 (D.C. Cir. 1970), cert. denied, 403 U.S. 923 (1971).
In denying a stay in this matter, this Court clearly stated that the title Executive High Sheriff is not titular but a position of "high visibility, substantial monetary compensation and enormous importance to the efficiency, safety and security of the judicial system." To place an individual who has demonstrated incompetence and ineffectiveness into another position of leadership, albeit, more narrow in scope and responsibility, strikes a severe blow to the "esprit de corps" of the Sheriff's Department, erodes the public's confidence and, therefore, does not serve the public interest.
 CONCLUSION
This Court finds that the Board's action defies both law and logic. The decision was in excess of the Board's authority, clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, and arbitrary and capricious and an abuse of the Board's discretion. Accordingly, this Court hereby vacates the Board's Order demoting DeCastro to the position of Bristol County Sheriff and reinstates the State's decision to terminate DeCastro from his position as Executive High Sheriff.
Counsel shall present the appropriate judgment for entry.
[1] It is undisputed that the position of Bristol County Sheriff consisted of supervising five deputy sheriffs charged with serving writs, and imposed no responsibilities on DeCastro regarding courthouse safety and security or education and training of those sheriffs under his supervision.